**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| | : | **Criminal Case No. 12-89-ABJ** |
| **v.** | : | **Honorable Amy Berman Jackson** |
| | : | |
| | : | |
| **STEPHEN THOMAS** | : | |
| | : | |
| | : | |

## GOVERNMENT'S SENTENCING MEMORANDUM

The Government, by and through its undersigned counsel, respectfully submits this memorandum for the Court's consideration in determining the appropriate sentence for defendant Stephen Thomas. The final presentence report appropriately calculates the defendant's total offense level as 13, with a corresponding recommended period of incarceration of 12 to 18 months. The government respectfully requests that this Court sentence the defendant to a term of imprisonment within this range, as it is sufficient but not greater than necessary to achieve the purposes set forth in 18 U.S.C. § 3553.

## I.    STATEMENT OF FACTS

### A.    Offense Conduct

The defendant evaded assessment of at least $573,785 in income from 2005 through 2007. He willfully failed to file individual income tax returns reporting this income and engaged in affirmative acts of evasion to conceal his income from the IRS. He withdrew cash on a weekly basis from two companies he contracted to advise, Company A and Company B, and his company, ECG. These withdrawals totaled more than $400,000. In addition to the cash withdrawals, he withdrew money from Companies A and B through wire transfers, and consistently moved the money through multiple bank accounts.

In 2005, he withdrew funds from Company A, which he used to obtain a cashier's check for the purchase of a Mercedes-Benz.  He then titled the Mercedes in his wife's name.  In 2006, the day after a business line of credit was approved for Company B, he wired $230,000 from the line of credit through different bank accounts, and secured cashier's checks, which he used to make a down payment on his primary residence.  He then titled the residence solely in his wife's name.  He engaged in these acts for the purpose of preventing the Internal Revenue Service from assessing his income tax liabilities.

## II.    SENTENCING CONSIDERATIONS

### A.    Statutory Maximum Sentence

The defendant faces a maximum sentence of 5 years (60 months) of imprisonment.

### B.    United States Sentencing Guidelines Calculation

The final presentence report properly applied U.S.S.G. §§ 2T1.4, 2T4.1 in calculating the advisory sentencing guidelines range as 12 to 18 months, based on a total offense level of 13 and a criminal history category of I.

#### 1.    Tax Loss Calculation

The final presentence report correctly states that the tax loss the defendant caused to the Internal Revenue Service is $154,362.

## III.    18 U.S.C. § 3553(a) FACTORS

### A.    Nature and Characteristics of the Offense

The defendant approached the owners of two well-established companies in Maine who were interested in selling their businesses and convinced them to allow his company to facilitate, advise and manage the sale of the respective companies to their employees, through an

Employee Stock Ownership Plan ("ESOP").  The defendant became Trustee of each ESOP, President of the companies and contracted to manage the ESOPs.

The defendant exercised control over the finances of these companies.  In that regard, he either directed or personally took consistent draws and transfers from the companies' accounts, including a company line of credit that he applied for on behalf of Company B.  He contracted for an annual fee of $150,000 from Company A and an unknown amount from Company B.  He transferred this money through multiple bank accounts, including an account in his wife's name, made cash withdrawals of more than $400,000 and purchased cashier's checks to fund the purchase of personal assets.  He then titled these assets, including his primary residence and a luxury vehicle, in his wife's name only.  In line with the defendant's efforts to conceal the income he was earning from these two companies, he also failed to file corporate and individual income tax returns reporting his income.

The defendant's contention that he did not take advantage of a weak company is disingenuous.  Within three years of the defendant controlling Company A, it was taken over by a local bank which had funded a significant portion of the ESOP sale.  Company B lasted two years under the control of the defendant before it filed for bankruptcy.  Because of the defendant's involvement, previously strong companies and their employees were left with nothing.

      B.    <u>Defendant's Characteristics</u>

The defendant is a very smart, sophisticated and well-educated businessman.  He had the skill, control and opportunity to receive his income in a manner reportable to the IRS.  Both companies employed payroll companies and comptrollers.  He controlled the finances as

President.  He controlled when and how he was paid for his management services.  He deliberately chose to take money out of the companies in weekly cash draws and direct wire transfers to various accounts.  As mentioned, he even applied for a business line of credit for Company B, and a day after the line was approved, wired $230,000 to his various accounts, a portion of which was used for the down payment on a new primary residence.

Furthermore, the defendant has clearly demonstrated that when he wants to, he will work hard to accomplish something.  And, that speaks volumes about what he chooses not to do.  To date, the defendant has not provided probation with any of the requested financial information.  Moreover, to date, he has still not filed his individual income tax returns, despite his agreement to do so.

His lack of action is based on choice, pure and simple.  And, it speaks volumes about his lack of respect for the situation and the Court.  The defendant has all of the records necessary to file his individual income tax returns for 2005 through 2007, because they were used by the government to calculate his unreported income and the tax he owes the government.  All of these records, including schedules of the income and expense calculations, were provided to the defendant through discovery earlier this year.  At this juncture, the defendant has no excuse for his lack of filing and failure to report his income.

      C.     <u>Need to Provide Just Punishment and Respect for the Law</u>

As the U.S.S.G. § 2T1.1 introductory commentary aptly states, "the criminal tax laws are designed to protect the public interest in preserving the integrity of the nation's tax system.  Criminal tax prosecutions serve to punish the violator and promote respect for the tax laws."  The defendant has shown through his actions and inactions that he is someone who does not

respect the tax laws.  A sentence of imprisonment within the advisory guidelines range is necessary to punish the defendant for his abuse of the system and promote respect for the tax laws.

       D.    <u>Need for Specific and General Deterrence</u>

The U.S.S.G. also appropriately stress that "because of the limited number of criminal tax prosecutions relative to the estimated incidence of such violations, deterring others from violating tax laws is a primary consideration under these guidelines.  Recognition that the sentence for a tax case will be commensurate with the gravity of the offense should act as a deterrent to would-be violators."  § 2T1.1 intro. comm.

In this case, the need for specific deterrence warrants a sentence of imprisonment. Despite the defendant's discussion of all of the ways in which a probationary sentence would be sufficiently punitive, practically it would not alter the day to day reality of the defendant in a manner strong enough to deter him from committing the same offense in the future.  The defendant's continued display of his lack of respect for the tax laws makes clear that a probationary sentence is not going to deter him from evading his income tax obligations in the future.

Moreover, the self-employed are a group which arguably have more of an opportunity to evade their income tax obligations, as there is no third party reporting to the IRS the income they earn.  Deterring other self-employed individuals from not reporting and concealing their income is an important factor in determining the appropriate sentence for the defendant.  A sentence of incarceration will serve to deter others who are similarly situated.

**IV.**    **RESTITUTION**

The defendant agreed as part of the plea agreement to make restitution to the IRS in the amount of $154,362.   In light of the defendant's agreement, the government respectfully requests this Court also order the defendant to pay $154,362 in restitution to the IRS as a condition of supervised release.

**V.**    **CONCLUSION**

For the foregoing reasons, the government respectfully requests that this Court sentence the defendant to a term of incarceration within the advisory sentencing guidelines range of 12 to 18 months and impose restitution to the IRS in the amount of $154,362, as a condition of supervised release.

Respectfully submitted,

KATHRYN KENEALLY
Assistant Attorney General

By:   /s/ Jessica Moran
JESSICA MORAN
JEFFREY BENDER
Trial Attorneys
U.S. Department of Justice
Tax Division
Criminal Enforcement Section
601 D Street, N.W., Room 7808
Washington, DC 20005
(202) 305-9814
(202) 616-1786 (fax)
jessica.n.moran@usdoj.gov
jeffrey.b.bender@usdoj.gov

6

## CERTIFICATE OF SERVICE

I hereby certify that on the 11th day of January 2013, I caused a copy of the foregoing to be delivered via electronic filing to:

Tony Miles, Esq.

*Counsel for Defendant Stephen Thomas*

/s/Jessica Moran
Jessica N. Moran
Jeffrey Bender
Trial Attorneys
U.S. Department of Justice

7